Sampson PEREZA, Appellee,

v.

Roy MARK, Appellant.

No. 465, Docket 33734.

United States Court of Appeals,
Second Circuit.

Argued Jan. 15, 1970.

Decided Feb. 3, 1970.

———◆———

John H. Downs, St. Johnsbury, Vt.
(Downs & Rachlin, St. Johnsbury, Vt.,
on the brief), for appellant.

David L. Buckley, Bellows Falls, Vt.
(Divoll & Buckley, Bellows Falls, Vt., on
the brief), for appellee.

Before KAUFMAN and FEINBERG,
Circuit Judges, and PALMIERI, District Judge.*

IRVING R. KAUFMAN, Circuit
Judge:

In 1967 the defendant Roy Mark, a laborer in an apple orchard, lived in the Vermont countryside, three miles from the village of Saxton's River. He was, as were many of his neighbors, an avid hunter and possessed several guns in his house. The newest and best of these guns, a Marlin 35 calibre deer rifle, was kept loaded with a full magazine but no bullet in the chamber. Mark's wife felt more comfortable knowing a loaded gun was close at hand, for the house was isolated, and Mark's work often forced him to remain away from home.

Roland Prouty, Mark's brother-in-law and a Marine Corps sergeant with seventeen years of experience, was also an enthusiastic hunter. When Sergeant Prouty returned to his home in Saxton's River on furlough in October 1967, he asked Mark for the use of his guns during the deer season. The defendant, who had already "got his deer" that season with a bow and arrow, told Sergeant Prouty, "Help yourself," and generously invited the Sergeant to use "even [his] new rifle." He neglected to mention that the "new rifle" was kept loaded.

* Of the Southern District of New York, sitting by designation.

One day in November Sampson Pereza, who had been the Proutys' next door neighbor when the Sergeant was stationed in Hawaii, drove up through the Connecticut River Valley from Hartford, where he then lived, to visit the Proutys in Saxton's River. The two families spent the day renewing old friendships while riding about on the Vermont country roads. That evening they decided to meet at Roy Mark's house and to accompany the Marks to a party.

When the Proutys and the Perezas arrived at the Marks' house only a babysitter and the Mark children were at home. So while they were waiting for the Marks to return, Pereza and the Sergeant sat in the kitchen drinking and talking. The kitchen, we are told by Sergeant Prouty, was an ordinary kitchen, "adequately lit"—not, "bright enough to repair watches * * * but at the same time * * * bright enough to sit down and eat or go ahead and do kitchen work." Pereza had one beer, and the Sergeant, who had had several beers earlier in the day, had two or three drinks of hard liquor. After approximately a half hour had elapsed, the two couples grew tired of waiting for the Marks and decided to return to the Proutys' house.

But the reunion was to end unhappily. While Pereza was preparing to leave the house through the kitchen door, Sergeant Prouty asked the babysitter to bring him the Marlin rifle, which he did. It was argued in the district court and before us that Sergeant Prouty could have checked whether the rifle was loaded by extending the lever to a halfway forward position and peering into the chamber to see whether there were bullets in either the chamber or the magazine. By following this procedure, when the lever was returned to the back position, the rifle would not have been activated for firing. But Sergeant Prouty had learned, and on this occasion employed, another method. He extended the lever to the full forward position, an action which would have caused a bullet in the chamber to be ejected. The Sergeant peered into the chamber and observed no bullet there, but failed to see the bullets stored in the magazine. He then returned the lever to the full back position. Unfortunately, moving the lever from the full forward position to the full back position caused one of the bullets in the magazine to be transferred into the chamber and also activated the rifle for firing. And, at this juncture, Sergeant Prouty stated, his finger must have touched the trigger. The rifle, of course, fired, and the bullet passed through the kitchen door and the arm of Pereza who, as mischance would have it, was standing in the line of fire on the kitchen steps.

The bullet fractured Pereza's arm in three places and severed both the median nerve and the main artery in the arm. Sergeant Prouty applied a tourniquet and rushed his friend to the Bellows Falls hospital. After hospitalization and a period of convalescence, Pereza still suffers a permanent residual injury.

Perhaps out of friendship, in any case for reasons not clear to us, Pereza sued not the Sergeant but Roy Mark. He contended that Mark had been negligent in keeping a loaded rifle and lending it to the Sergeant without telling him the gun was loaded. After a trial before Judge Leddy, the jury returned a verdict of $20,000 in favor of Pereza.

█ Had Prouty been a seventeen-year-old minor rather than a seventeen-year veteran of the Marine Corps, the jury's verdict would have been uncontestable. Giguere v. Rosselot, 110 Vt. 173, 3 A.2d 538 (1939). On the other hand, if the rifle had been unloaded or if the Sergeant had known that Mark kept it loaded, we would be hard put to characterize Mark's conduct as negligent. But the facts are otherwise. The

gun was loaded—in a manner unlikely to be discovered in a brief inspection—and Sergeant Prouty was unaware of its condition. The injury to Pereza was exactly the type of accident which could have been expected to result from Mark's initial conduct. After a perfunctory examination to determine whether the gun was loaded, Sergeant Prouty accidentally fired it, shooting a bystander. Twelve Vermont jurors have determined that keeping a loaded gun and lending it to another without telling him it is loaded constitutes negligence. They and Judge Leddy are very likely better acquainted with rifles than we are. They are certainly better able to decide what constitutes careless handling of firearms in Saxton's River, Vermont. (As counsel for both sides conceded upon the argument of this appeal, the voir dire examination established that all twelve jurors owned rifles; counsel also conceded that Judge Leddy is an expert marksman.) We see no reason to disturb their finding of negligence, which Mark seeks to overturn on appeal.

Given the determination that Mark's initial conduct was negligent, there is no merit to his other contentions, that his neglect was not the proximate cause of Pereza's injury or that negligence on the part of Sergeant Prouty constituted an independent, intervening cause. Under Vermont law it is clear that Mark's neglect and the Sergeant's acts would both be considered efficient and proximate causes. See Dodge v. McArthur, 126 Vt. 81, 223 A. 2d 453 (1966); Giguere v. Rosselot, 110 Vt. 173, 3 A.2d 538 (1939). Wherever there is more than one efficient cause of an injury, the injury may be attributed to any or all of these causes, and the Vermont courts permit recovery from a defendant responsible for any one of them. La Faso v. La Faso, 126 Vt. 90, 223 A.2d 814 (1966). The judgment is affirmed.